## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Michael Giza,              :
             Appellant         :
                               :
        v.                    :
                               :
Commonwealth of Pennsylvania,   :
Department of Transportation,     :    No. 763 C.D. 2022
Bureau of Driver Licensing       :    Submitted: March 17, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: August 11, 2023

       Jason Michael Giza (Licensee) appeals from the April 22, 2022 order (Trial Court Order) of the Court of Common Pleas of Butler County (Trial Court). The Trial Court Order dismissed Licensee's statutory appeal from an 18-month driver's license suspension[1] imposed by the Commonwealth of Pennsylvania,

---

[1] This matter originally involved appeals from two separate notices of suspension/disqualification, each with its own lower court docket number. *See* Trial Court 1925(a) Memorandum Opinion filed July 6, 2022 (Trial Court Opinion) at 1-2. The first appeal is of an 18-month driver's license suspension at Butler County Court of Common Pleas Docket No. 40215-2020, and the second is of a 12-month commercial driving privilege disqualification at Butler County Court of Common Pleas Docket No. 40214-2020. *See id.* As both the license suspension and the commercial driving privilege disqualification arose from the same set of facts, the Trial Court granted an oral motion to consolidate the appeals and conducted a single hearing on the matters on April 22, 2022. *See id.* Following the hearing, on April 22, 2022, the Trial Court issued two separate orders dismissing Licensee's appeals, one for each docket. *See id.* at 2. On May 20,

Department of Transportation, Bureau of Driver Licensing (DOT), pursuant to what is commonly known as the Vehicle Code's Implied Consent Law, 75 Pa. C.S. § 1547(b) (Implied Consent Law), as a result of Licensee's refusal to submit to chemical testing upon his arrest for driving under the influence of alcohol or a controlled substance (DUI).[2] Upon review, we affirm.

On August 2, 2020, Pennsylvania State Police Trooper Christopher Callahan[3] was dispatched to Licensee's residence in Jefferson Township, Butler County, to respond to a domestic disturbance between Licensee and his wife.[4] *See* Notes of Testimony (N.T.) 4/22/2022 at 9. Trooper Callahan spoke with three different female witnesses regarding the domestic incident. *See id.* The witnesses explained that they had been trying to leave the property in a Chevy Suburban and that Licensee had rammed their vehicle from behind several times with the GMC pickup truck he was operating. *See id.* at 10. In speaking with Licensee at the scene, Trooper Callahan observed that Licensee's eyes were red, bloodshot, and glassy.

---

2022, Licensee timely filed a single notice of appeal under docket number 40215-2020 (the driver's license suspension), to which he attached the Trial Court's orders in both docket numbers. *See id.* Thereafter, on July 12, 2022, Licensee filed a Motion to Amend Notice of Appeal (Motion to Amend) claiming that docket number 40214-2020 had been inadvertently omitted from the caption of the previously filed notice of appeal. *See* Motion to Amend, Reproduced Record (RR) at 8a-22a. On July 19, 2022, after Licensee (or anyone on his behalf) failed to appear at the scheduled presentation of the Motion to Amend, the Trial Court denied the Motion to Amend. *See* Trial Court Order dated July 19, 2022, RR at 23a. Accordingly, only the appeal of Licensee's 18-month driver's license suspension is currently before this Court.

[2] 75 Pa. C.S. § 3802.

[3] Trooper Callahan has been a Pennsylvania State Trooper for approximately 2.5 years, has received training on driving under the influence (DUI) traffic stops, as well as training on recognizing the signs of drug and alcohol intoxication. *See* Notes of Testimony (N.T.) 4/22/2022 at 8-9.

[4] A second Pennsylvania State Trooper accompanied Trooper Callahan to Licensee's residence. *See* N.T. 4/22/2022 at 9.

*See id.* 10.  Trooper Callahan further observed a strong odor of alcohol emanating from Licensee's breath and person.  *See id.* at 10, 11.  The witnesses informed Trooper Callahan that Licensee had been drinking alcohol that evening, and Licensee confirmed the same.[5]  *See id.* at 11, 12.  Trooper Callahan observed a laceration on the back of Licensee's head, but Licensee did not want to speak about the laceration, claimed not to know how it occurred, and refused medical treatment.[6]  *See id.* at 11.  Further, while he did not observe Licensee operate the motor vehicle, Trooper Callahan observed that the damage to the witnesses' vehicle and Licensee's vehicle comported with the descriptions of events given by the witnesses.  *See id.* at 12.

Based on the above, Trooper Callahan concluded that Licensee was unsafe to operate a motor vehicle,[7] placed Licensee under arrest for DUI,[8] and transported him to the police barracks.  *See* N.T. 4/22/2022 at 10, 13-14.  Once at the police barracks, Trooper Callahan requested Licensee to submit to chemical breath testing and advised Licensee of the refusal warnings contained in the DOT DL-26A form[9] by reading Licensee the warnings in their entirety, verbatim.  *See id.*

---

[5] Licensee told EMS personnel that he had consumed approximately 10 beers that night.  *See* N.T. 4/22/2022 at 12-13.

[6] Trooper Callahan subsequently learned that the laceration was caused during an altercation between Licensee and another male at Licensee's residence.  *See* N.T. 4/22/2022 at 11.

[7] Trooper Callahan did not perform the standard field sobriety tests due to Licensee's evident level of intoxication.  *See* N.T. 4/22/2022 at 10.

[8] In addition to DUI, Trooper Callahan charged Licensee with aggravated assault, three counts of simple assault, recklessly endangering another person, disorderly conduct, and harassment.  *See* N.T. 4/22/2022 at 13-14.

[9] The DL-26A form's breath testing warnings read as follows:

at 10, 15, 16. Licensee expressed no confusion as to the warnings, but verbally refused to submit to chemical testing and refused to sign the DL-26A form.[10] *See id.* at 10, 15, 16, 18.

_____

It is my duty as a police officer to inform you of the following:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of breath. You must successfully complete two consecutive breath samples in order to complete a chemical test of breath.

3. If you refuse to submit to the breath test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored. In addition, if you refuse to submit to the breath test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of up to $10,000.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a breath test, you will have refused the test.

RR at 39a.

[10] Trooper Callahan signed the DL-26A certification indicating that Licensee refused to sign. *See* N.T. 4/22/2022 at 15.

4

Later, by letters dated August 21, 2020, DOT suspended Licensee's driving privilege for 18 months and disqualified his commercial driver's license for 12 months. *See* Trial Court Opinion at 1-2. Licensee timely appealed both suspensions to the Trial Court, which conducted a consolidated hearing on both suspensions on April 22, 2022. *See* Trial Court Opinion at 5; *see also* N.T. 4/22/2022. The Trial Court denied Licensee's appeals of the driver's license suspension and the commercial driver's license disqualification by separate orders for each Trial Court docket number on April 22, 2022. *See* Trial Court Orders; *see also* Trial Court Opinion at 5. Licensee timely appealed the driver's license suspension to this Court. *See supra* n.1.

On appeal,[11] Licensee claims that the Trial Court erred by determining that Licensee made a knowing and conscious refusal to submit to requested chemical testing. *See* Licensee Br. at 6, 12-15. Licensee claims that he was not required to present medical testimony to prove that he did not make a knowing and conscious refusal. *See* Licensee's Br. at 14. Rather, Licensee argues that the laceration to his head "was obviously incapacitating[] and affected his ability to make a knowing and conscious refusal." *Id.* (citing *Dep't of Transp. Bureau of Traffic Safety v. Day*, 500 A.2d 214 (Pa. Cmwlth. 1985) and *Dep't of Transp., Bureau of Driver Licensing v. Groscost*, 596 A.2d 1217 (Pa. Cmwlth. 1991)). He is not entitled to relief.

Initially, we note:

> To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1)

---

[11] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

5

the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). In the instant matter, no dispute exists as to three of these elements: Licensee was arrested for drunken driving based on reasonable grounds to believe that he was driving under the influence, Trooper Callahan clearly requested that Licensee submit to chemical testing, and, by reading the DL-26A form, Trooper Callahan warned Licensee that his refusal to submit to chemical testing would result in a license suspension. Licensee challenges only the Trial Court's conclusion that he knowingly and consciously refused to submit to the requested chemical testing.

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). As this Court has explained,

a motorist's self-serving testimony that []he was incapable of providing a knowing and conscious refusal of a chemical test is insufficient to meet [his] burden of proving incapacity. Rather, a licensee's incapacity defense must be supported by competent medical evidence where []he suffers from no obvious disability.

6

*Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018) (internal citations omitted); *see also Dep't of Transp., Bureau of Driver Licensing v. Walsh*, 606 A.2d 583, 585 (Pa. Cmwlth. 1992) (holding that "[w]here a licensee has sustained injuries but does not suffer from an obvious inability to comply with the request to be tested, competent medical testimony is required to prove that a knowing and conscious refusal could not be made").

Here, the Trial Court explained:

> The credible testimony establishes [Licensee] suffered a laceration to his head that was of sufficient severity for the Troopers to contact EMS personnel to evaluate the laceration. However, there was no testimony presented to the [Trial] Court that EMS personnel or the Troopers deemed it necessary to transport [Licensee] to the hospital, that EMS personnel or the Troopers determined that [Licensee] was suffering from a concussion, or that EMS personnel or the Troopers decided any further medical attention was warranted. As such, there was no evidence before the [Trial] Court that would support a determination [that Licensee] suffered from a severe, incapacitating injury as a result of his head injury. Consequently, [Licensee] was required to present competent medical testimony to support his argument that the injury to his head resulted in his inability to make a knowing and conscious refusal to submit to a chemical breath test. [Licensee] presented no such testimony. As such, [Licensee] failed to meet his burden to prove [that] his refusal to submit to a chemical breath test was not a knowing and conscious decision.

Trial Court Opinion at 6-7 (internal quotation marks omitted).

We agree with the Trial Court. We find unconvincing Licensee's suggestion that the laceration to the back of his head represented an obvious

injury/disability that excused the requirement that he support his contention that he was incapable of providing a knowing and conscious refusal of a chemical test with competent medical evidence. *See* Licensee's Br. at 14. While Trooper Callahan did observe the laceration, Licensee interacted meaningfully with the Trooper, refusing to discuss how the laceration occurred and refusing medical treatment. Licensee's behavior did not exhibit an obvious inability to comply with a request to undergo chemical testing. As such, the Trial Court did not err or abuse its discretion by determining that Licensee was required to present competent medical testimony to support his argument that the injury to his head resulted in his inability to make a knowing and conscious refusal to submit to a chemical breath test.[12] Despite this requirement, Licensee did not provide any testimony that his mental acuity was reduced by the laceration on the back of his head. Further, Licensee offered no competent medical testimony to indicate that his cognitive ability had been reduced as a result of the laceration. Instead, the only mention of alleged mental issues related to the laceration came from implications raised by Licensee's cross-

---

[12] The cases Licensee cites in support of his contention that he was incapable of providing a knowing and conscious refusal as a result of the laceration on his head are readily distinguishable. *See* Licensee's Br. at 13-14. *Department of Transportation, Bureau of Traffic Safety v. Day*, 500 A.2d 214 (Pa. Cmwlth. 1985), concerned an individual involved in an accident in which he suffered extensive injuries, including a broken jaw, severe facial lacerations, a broken arm, an injured leg, and blows to the back of the head, which injuries resulted in rambling speech, confusion, and periodic total memory loss. Likewise, *Department of Transportation, Bureau of Driver Licensing v. Groscost*, 596 A.2d 1217 (Pa. Cmwlth. 1991), involved a driver who drove his vehicle into a telephone pole and whose injuries resulting from his contact with the vehicle's steering wheel and steering column were extensive enough to require a five-day hospital stay. These cases involved injuries and effects far more obvious and acute than Licensee's head laceration in the instant matter.

examination questions[13] to Trooper Callahan, objection to which questions the Trial Court sustained due to Trooper Callahan not being a proper medical expert.[14]  *See* N.T. 4/22/2022 at 19-21.  Given these facts, we find no error or abuse of discretion in the Trial Court's determination that Licensee failed to put forth adequate competent medical evidence to support his suggestion that the non-obvious effects of the laceration of his head resulted in an inability to knowingly and consciously refuse Trooper Callahan's request that he submit to chemical testing.

For these reasons, we affirm the Trial Court Order.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[13] Although represented in this appeal, after a colloquy conducted by the Trial Court, Licensee expressly waived his right to be represented by counsel and represented himself at the April 22, 2022 hearing.  *See* N.T. 4/22/2022 at 5-6.

[14] We acknowledge that, during cross-examination, Licensee questioned Trooper Callahan about a video recording of the altercation that resulted in the laceration to the back of Licensee's head.  *See* N.T. 4/22/2022 at 19-21.  Trooper Callahan explained that the video showed a physical altercation between Licensee and another male that Trooper Callahan assumed resulted in the laceration.  *See* id. at 19-20.  The video itself was neither played during the trial nor offered into evidence.  However, the Trial Court presumably considered this testimony regarding the video in rendering its decision as to whether whether Licensee's mental acuity had been reduced by the altercation that resulted in the laceration to the point where he could not have made a knowing and conscious refusal to submit to the requested chemical testing.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Michael Giza,                       :
                    Appellant             :
                                          :
          v.                              :
                                          :
Commonwealth of Pennsylvania,             :
Department of Transportation,             :    No. 763 C.D. 2022
Bureau of Driver Licensing                :

O R D E R

AND NOW, this 11th day of August, 2023, the April 22, 2022 order of the Court of Common Pleas of Butler County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge